PATRICK SHORT, Respondent, v. LOUIS C. BOHLE, Appellant.

St. Louis Court of Appeals, December 24, 1895.

1.   ———: DANGEROUS DISPOSITION OF HORSE : LIABILITY OF OWNER : SUFFICIENCY OF EVIDENCE.   The evidence in this case is considered, and is held sufficient to establish a right of recovery for damages caused by a collision upon a public street, alleged to have resulted from the known dangerous disposition of a horse of the defendant.

2.   ———: ———: COMPETENCY OF EVIDENCE OF REPUTATION OF HORSE. The evidence of the reputation of the horse among those employed in the stable of the defendant wherein the animal was kept, while not competent for the purpose of showing the disposition possessed by the horse, is competent for the purpose of establishing notice to the defendant of its disposition.

3.   Practice, Appellate : INSTRUCTIONS: ERROR IN FAVOR OF APPELLANT.   An appellant is not entitled to complain of error in his favor in an instruction.

4. **Evidence**: EFFECT OF CONTRADICTORY STATEMENTS OF WITNESSES. Evidence that a witness has made a prior statement out of court, which is inconsistent with his testimony, is competent only for the purpose of impeaching his credibility, and will have no tendency to establish the truth of such prior statement.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Albert C. Davis* for appellant.

(1) The motion for a nonsuit should have been sustained. There was no testimony that defendant knew that the horse was vicious and prone to do the act causing the injury. *Tupper v. Clark*, 43 Vermont, 200; Hanover, Law of Horses, sec. 731, page 380; Wharton on Negligence, sec. 923. (2) The objection to the testimony in regard to the character and reputation of the horse while in defendant's stable, his actions when not driven upon the streets, and for things which did not cause the injury, should have been sustained. *Belle v. Leslie*, 24 Mo. App. 661. Cooley on Torts, page 344; *Spray v. Ammermann*, 66 Ill. 309. *Keightlinger v. Egan*, 65 Ill. 235. (3) Plaintiff's instruction number 1 is erroneous, because it authorizes a verdict for plaintiff if defendant was aware of the disposition of the horse and "permitted his employee to take and drive said horse." Cooley on Torts, pages 340 and 345, and cases there cited; *Reddick v. Newburn*, 76 Mo. 423; *Russell v. Cottom*, 31 Pa. St. 525; *Belle v. Leslie*, 24 Mo. App. 661; Thompson on Negligence, pages 199 and 200; *Voegeli v. The Pickel Marble & Granite Co.*, 49 Mo. App. 643.

*Alex Young* for respondent.

ROMBAUER, P. J.—The plaintiff, accompanied by his wife, was driving in a phaeton on Lindell Boule-

vard, a much frequented thoroughfare in the city of St. Louis, when a horse owned by the defendant and driven by the foreman of his livery stable became unmanageable, upset the sulky to which he was hitched, and, striking the plaintiff's phaeton in the rear, upset and broke it and precipitated the plaintiff and his wife to the pavement, inflicting on the former serious injuries. The plaintiff thereupon brought this action and upon its trial recovered a judgment, which, as to amount, was fully warranted by the evidence. In seeking to reverse this judgment the defendant assigns for error the rulings of the court on the evidence and instructions, and that the verdict is against the evidence.

The petition states "that, before and at the time of the taking the said horse out upon the public streets and boulevard of said city as aforesaid, both the defendant and his said servant and employee well knew the the wild, vicious, dangerous and unmanageable, disposition of said horse." The defendant claims that there is no substantial proof that the horse was wild, vicious, dangerous and unmanageable, or that the defendant knew these facts, and, hence, that his demurrer to the evidence should have been sustained. There was no substantial evidence that the horse was wild and vicious; but there was ample evidence that he was dangerous and unmanageable, and that the defendant knew this. The plaintiff's evidence tended to show that a few days before this accident a hostler of defendant, who had many years experience in driving horses, took the horse out for exercise; that the horse broke away from him; and that the defendant, who witnessed this fact, remarked to his hostler that he thought "the horse would break his neck the way he was running." The foreman was also present on this occasion, and we may add that, owing to his position in defendant's

service, his knowledge of the disposition of the horse was imputable to the defendant. There was further evidence that the disposition of the horse to break away was such "that no living man could hold him;" that one "had to be on his guard all the time with the horse;" "that it took several men to hold him while the driver mounted his seat;" and that, when he was driven out on the occasion of the accident, he broke away from the foreman at the stable and had to be retaken to the stable to have his checks tightened. Even one of defendant's witnesses testified that he saw the horse, when driven, come out of the stable "at what we would call a fire department rate." The nervous and excitable disposition of the horse may have been owing to the fact that he was not sufficiently exercised. The question, however, is not what the cause of this dangerous disposition was, but whether it existed to the defendant's knowledge. *Staetter v. McArthur*, 33 Mo. App. 218, and cases cited. As there was substantial evidence in the case that the dangerous propensities of the horse were previously known to the defendant, the demurrer to the evidence was properly overruled.

Complaint is made of the action of the court in permitting the plaintiff, against the defendant's objection, to show what the reputation of the horse was in the stable among those who drove it. The objection was placed upon the specific ground that the reputation in the stable had nothing to do with his reputation on the road, and not on the ground that evidence of reputation was inadmissible. The court seems to have overruled the objection on the ground that, while evidence of reputation was inadmissible to show the character of the horse, it was admissible to show imputable notice to the defendant. That ruling is in conformity with the adjudications in this state. *Bennoist v. Darby*, 12 Mo. 196, *loc. cit.* 206.

We have carefully examined the instructions, and find that the objections the defendant makes to them are untenable. The main objection is that they are contradictory; that in plaintiff's instruction the defendant is made liable if the jury should find that the defendant *permitted or directed* his foreman to drive the horse in question, while in the instruction given by the court of its own motion the court makes it a prerequisite to such liability that the foreman of the defendant drove the horse "*by the defendant's order or direction at the time.*" The difference between these two instructions could not possibly have misled the jury, since all the evidence concedes that the driver was the defendant's foreman, and that it was part of the foreman's duties to see that the horses were properly exercised. The defendant himself testifies: "I told him (the foreman) any time he felt like it he might hitch any of those horses up and exercise them."

The court of its own motion instructed the jury as follows:

"The burden of proof is on the plaintiff to satisfy you by a preponderance of the evidence:

"1. That the horse in question was of a wild, vicious, unmanageable *and* dangerous disposition, and likely to run away when driven in the streets.

"2. That the disposition of the horse to be wild, vicious, unmanageable *and* dangerous, and likely to run away when driven in the streets (if such was the disposition of the horse), was known to the defendant, or to the defendant's foreman and employees who had charge, care and management, of said horse at or before the time the plaintiff was injured.

"3. That the witness Tufford, who drove the horse at the time of the occurrence in question, was then in the execution of the defendant's business, or

that the said Tufford was driving the horse by the defendant's order or direction at the time.

"By mentioning the 'burden of proof' and the 'preponderance of evidence,' the court means merely to briefly express the rule of law, which is that unless the evidence before you, in regard to the facts necessary (under these instructions) to a verdict in favor of plaintiff, appears in your judgment more credible than the contrary evidence regarding said facts, or than the evidence of the facts mentioned in these instructions as constituting a defense to plaintiff's said claim, then your verdict should be for the defendant."

Of these instructions the defendant certainly can not complain, since the court by using the word "*and*" as italicized above, instead of using the word "*or*" put a greater burden upon the plaintiff than his pleadings and evidence required.

The instructions given for defendant were more favorable to him than the evidence warranted. There was no evidence in the case that the horse on the occasion in question became frightened by passing bicycles, and yet that fact was submitted to the jury as tending to exonerate the defendant. It is true there was evidence that the foreman had stated to several witnesses that passing bicycles had frightened the horse. This evidence the defendant adduced for the purpose of impeaching the foreman's veracity. But impeaching evidence is not evidence of the fact touching which the witness is sought to be impeached. It is only the admission of parties which is evidence of the facts admitted.

We find no error in the record, and hence affirm the judgment. All concur.